**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

| | |
|---|---|
| **Sammy Gross, as the Administrator of the Estate Of Pauline Tillman Wagner, deceased and on behalf of her heirs and wrongful death beneficiaries,** | |
| Plaintiff, | |
| v. | |
| **GGNSC Southaven, LLC (d/b/a Golden Living Southaven); Golden Gate National Senior Care, LLC; GGNSC Equity Holdings, LLC; GGNSC Clinical Services, LLC; GPH Southaven, LLC; GGNSC Holdings, LLC; GGNSC Administrative Services LLC; Geary Property Holdings, LLC; Beverly Enterprises Inc.; Pearl Senior Care, LLC; and Drumm Corp, LLC,** | **CIVIL ACTION NO. 3:14-cv-00037-MPM-SAA** |
| Defendants. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL ARBITRATION
AND STAY PROCEEDINGS**

This is a nursing home case that sounds in medical malpractice and ordinary negligence, as well as other theories of recovery. The Complaint was filed on January 21, 2014. On March 12, 2014, Defendant GGNSC Southaven, LLC moved this Court to compel arbitration (Doc. 25). For present purposes, the Plaintiff will refer to all Defendants collectively as Golden Living.

Golden Living believes this matter should be compelled to arbitration. Ms. Wagner's signature appears nowhere on any of the admissions paperwork. Because the arbitration document is invalid and unenforceable, the Plaintiff respectfully opposes Golden Living's motion, as explained herein.

**(I)     The burden falls to Golden Living to establish that the contracts at issue are valid and enforceable.**

It is true that, broadly speaking, "[a]rbitration is favored" under both state and federal law. The Federal Arbitration Act provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Nitro-Lift Technologies, LLC v. Howard, 133 S.Ct. 500, 503 (2012), citing 9 U.S.C. § 2. But arbitration's favor is by no means absolute. Courts "apply the federal policy favoring arbitration when addressing ambiguities regarding whether a question falls *within an arbitration agreement's scope*, but we do not apply this policy when determining *whether a valid agreement exists*" in the first place. Sherer v. Green Tree Servicing LLC, 548 F.3d 379, 381 (5th Cir. 2008) (emphasis added), citing, *e.g.* Westmoreland v. Sadoux, 299 F.3d 462, 465 (5th Cir. 2002). Every "arbitration provision is severable from the remainder of the contract," and "its validity is subject to initial court determination." Howard, *supra*, 133 S.Ct. at 503, citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 446 (2006).

There is a "two-step analysis" required "to determine whether a party may be compelled to arbitrate." Sherer v. Green Tree Servicing LLC, 548 F.3d 379, 381 (5th Cir. 2008); see also East Ford, Inc. v. Taylor, 826 So. 2d 709, 713 (Miss. 2002). Courts must "[f]irst … ask if the party has agreed to arbitrate," and "then ask if 'any federal statute or policy renders the claims nonarbitrable.'" Sherer at 381, quoting JP Morgan Chase & Co. v. Conegie, 492 F.3d 596, 598 (5th Cir. 2007). "That first step itself contains two questions: (1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement." Sherer at 381 (citations omitted). For purposes of the underlying motion only, Mr. Gross reserves (without waiving) any available challenge to the second requirement — *i.e.* "that the claims would otherwise be within the scope of the arbitration clause," assuming it were

enforceable. Sherer at 381. Therefore, "the present case turns solely on the first question of whether a valid agreement exists." Id.

The "burden of proving whether the arbitration agreement actually exists rests on the party seeking to invoke the agreement." Trinity Mission Health & Rehab v. Lawrence, 19 So.3d 647, 651-52 (¶14) (Miss. 2009).[1] In the present case, Golden Living affords only sparse, cursory treatment to this fundamental question.

However, Golden Living "cannot draft a contract" where "two parties … have not manifested a mutual assent to be bound." Byrd v. Simmons, 5 So.3d 384, 389 (Miss. 2009) (internal quotations omitted). The same Magistrate Judge now presiding over this case recently noted that the "ultimate enforceability of the actual arbitration agreement … is a mixed question of law and fact that is the heart of the case, the resolution of which requires evidentiary support." GGNSC-Batesville, LLC v. Webb (Unreported, No. 2:09-CV-07-SAA), 2009 WL 4347199, at *5 (N.D. Miss., Nov. 24, 2009).[2] As shown below, the only "evidentiary support" that Golden Living asserts is a signature line on a document with missing pages. Of course, there is more to a contract than the signature line. The Plaintiff prays this Court to examine these purported contracts a bit more closely before taking for granted their validity.

> **(II) The contract is invalid for lack of legal capacity and lack of mutual assent, because Ms. Wagner did not sign them and Mr. Gross had no authority to do so.**
>
> **(a) There is no actual or apparent authority.**

The arbitration document was not signed by Ms. Wagner, the nursing home resident whom Golden Living now seeks to force into arbitration. Golden Living does not deny that

---

[1] The Mississippi Supreme Court quoted this Court's own Chief Judge Mills as he had articulated the applicable standard in Mariner Healthcare, Inc. v. Green (Unreported, No. 4:04-CV-246; 2006 WL 1626581; 2006 U.S. Dist. LEXIS 37479; at *4 (N.D. Miss. Jun. 7, 2006).
[2] All unreported cases and slip copies cited by the Plaintiff are appended hereto as **Collective Exhibit 3**.

these documents are wholly devoid of Ms. Wagner's signature. Instead, it unilaterally declares that Sam Gross is Ms. Wagner's "person duly authorized by the Resident or otherwise to execute this agreement and that accept the terms" (Doc. 26 at 10). It offers no documents or testimony or evidence to meet its burden to actually *show* — rather than presume — Mr. Gross' authority to sign on his mother's behalf. See Monticello Cmty. Care Ctr., LLC v. Estate of Martin ex rel. Peyton, 17 So.3d 172, 177 (¶5) (Miss. Ct. App. 2009) ("burden of proving an agency relationship rests squarely upon the party asserting it") (citing cases). Nowhere in the underlying briefs do the Defendants endeavor to substantiate that claim. They simply take it for granted and declare it to be so.

In 2006, this Court's own Chief Judge Michael P. Mills decided a case with nearly identical facts to the ones at bar: Mariner Healthcare, Inc. v. King (Unreported, No. 4:04CV263) 2006 WL 1716863 (N.D. Miss. June 19, 2006). In King, the issue was "whether [a nursing home] should be permitted to compel arbitration even though the [resident] did not sign the arbitration agreement at issue herein." Id. at *2 Just like in the instant case, "[the resident]'s daughter Jacqueline King did, in fact, sign the agreement," but "no power of attorney or similar document had been signed which might permit her to sign on her father's behalf." Id.

The court found that King's arbitration dispute was "identical" to a case decided less than two weeks earlier against that same defendant: Mariner Healthcare, Inc. v. Green (Unreported, No. 4:04-CV-246), 2006 WL 1626581; 2006 U.S. Dist. LEXIS 37479 (N.D. Miss. Jun. 7, 2006). King at *2. In Green, "this court … denied [the nursing home]'s complaint to compel arbitration against a … similarly situated" nursing home resident. King at *2. Green was reminiscent of yet a third case, Mariner Healthcare, Inc. v. Estate of Rhodes (Unreported, No. 5:04cv217), 2005 U.S. Dist. LEXIS 42650 (S.D. Miss. Sept. 27, 2005). King at *2. With so many layers of

factually analogous precedent before him, Chief Judge Mills declined to reinvent the proverbial wheel. Instead, he simply quoted a large portion of the <u>Green</u> decision, which had in turn incorporated <u>Rhodes</u>. The excerpt read in relevant part:

> Judge Bramlette reasoned that in order to be able to bind [Mother] to the arbitration agreement, Mariner needed to show that [Daughter] had authority to act as [Mother]'s agent. Judge Bramlette then considered the three potential grounds for finding agency authority. The first such ground was the existence of express or implied authority, which was wholly lacking, as no documentation or evidence had been provided by Mariner to show that [Mother] gave her daughter authority to act as her agent for the purposes of signing an arbitration agreement.
>
> Next, Judge Bramlette considered whether any apparent authority existed which might have given [Daughter] the power to bind [Mother] to the arbitration agreement. Judge Bramlette noted that apparent authority is to be "determined from the acts of the principal and requires reliance and good faith on the part of the third party." <u>Terrain Enters., Inc. v. Western Casualty & Surety Co.</u>, 774 F.2d 1320, 1322 (5th Cir. 1985) (citing <u>Tarver v. J.E. Sanders Cotton Mill</u>,192 So.2d 17 (Miss. 1939)). Mariner had alleged no act on the part of [Mother] indicating that she authorized Katherine to act as her agent in the matter of the arbitration agreement, and so Judge Bramlette held that Mariner had failed in its burden to show that apparent authority existed.

<u>King</u> at *2, quoting <u>Green</u> at 3-6. The third and final consideration involved the application of health care surrogacy under <u>Miss. Code Ann.</u> § 41-41-211 (<u>see</u> <u>King</u> at *3), but Golden Living has never invoked that statute in the present case (it does not apply).

A few weeks before <u>Rhodes</u>, the Southern District had "c[o]me to an identical conclusion in <u>Mariner Health Care, Inc. v. Guthrie</u>" (Unreported, No. 5:04cv218-DCB-JCS), 2005 U.S. Dist. LEXIS 42651 (S.D. Miss. Aug. 24, 2005). <u>King</u> at *3. After reviewing the "cogent analysis" of <u>Green</u>, <u>Rhodes</u>, and <u>Guthrie</u>, the Northern District in <u>King</u> was "persuaded" that it "could scarcely reach a differing conclusion" on virtually identical facts. <u>King</u> at *3-4. Since the resident in <u>King</u> had never signed the agreement and there was no proof of agency, the nursing home had "failed in its burden to show that [the Daughter] had authority to sign away her father's legal right to a jury trial in an arbitration agreement." <u>King</u> at *4. "Accordingly, no

valid arbitration agreement exist[ed]" and the "motion to compel arbitration … [wa]s DENIED." Id. (emphasis in original).

Golden Living insists that "Mr. Gross represented that he was the person duly authorized" to act on his mother's behalf. Doc. 26 at 10. But like the unsuccessful movants in King, Green, Rhodes, and Guthrie, Golden Living "has alleged no act on the part of [Ms. Wagner] indicating that [s]he, in any way, authorized [Ms. Gross] as h[er] agent." Guthrie at *15. It is axiomatic that the "[a]pparent authority of an agent only binds the principal" if the "**acts or conduct of [the] principal** indicat[e the] agent's authority…." McFarland v. Entergy Miss., Inc., 919 So. 2d 894, 901 (¶26) (Miss. 2005) (emphasis added), quoting Eaton v. Porter, 645 So.2d 1323, 1325 (Miss. 1994). In other words, Mr. Gross cannot authorize himself through his own actions. Apparent authority would arise not from the acts of Mr. Gross, but form the acts of Ms. Wagner, the principle. Without this essential element, Golden Living is not entitled to compulsory arbitration.

In Mariner v. Guthrie, supra, the Southern District explained:

> In Mississippi, "one who relies on the acts of an agent to bind his principal has the burden of proving the authority of the agent." Textile Supplies, Inc. v. Garrett, 687 F.2d 123, 126 (5th Cir. 1982) (citing Thorp Fin. Corp. v. Tindle, 249 Miss. 368, 162 So. 2d 497, 500 (Miss. 1964) & Cue Oil Co. v. Fornea Oil Co., 208 Miss. 810, 45 So. 2d 597, 599 (Miss. 1950)). Kay Guthrie's signature as Guthrie, Sr.'s "legal representative" does not make her an agent without some indication of either an express or apparent authority derived from the acts of the alleged principal. Mariner has made no showing that Guthrie, Sr. did anything to empower Kay Guthrie as his agent. Because Mariner bears the burden to prove Kay Guthrie's authority, the Court will not presume that one exists merely because she signed as a "legal representative" and Guthrie, Sr. did not object to her acting on his behalf.

Guthrie at *16-17. Golden Living has not cited any specific actions by Ms. Wagner. It has yet to even argue that it ever relied upon anything Mr. Gross personally did or said. Instead, the nursing home chose to entertain a hypothetical set of facts that happened to work to its benefit,

unbeknownst to Mr. Gross. Under Mississippi law, that does not amount to legal authority. <u>See</u>, e.g., <u>Guthrie</u> at *15.

### (b) There is no third party benefit.

Golden Living fares no better in its argument that Ms. Wagner was somehow the third party beneficiary of a contract that she never signed or otherwise accepted. *See* Doc. 26 at 10. For this theory, Golden Living cites <u>Cook v. GGNSC Ripley, LLC</u>, 786 F.Supp.2d 1166 (N.D. Miss. 2011). <u>Id.</u> In <u>Cook</u>, an arbitration agreement was only enforced because the resident was found to be "an intended third-party beneficiary of the agreement between the facility and [the resident's daughter]." <u>Cook</u> at 1172. However, that finding arose from unique additional facts that do not appear in the present case. <u>Cook</u> likened itself to <u>Forest Hill Nursing Center, Inc. v. McFarlan</u>, 995 So. 2d 775, 783 (¶ 25) (Miss. Ct. App. 2008), where "a resident's granddaughter signed admission paperwork" committing herself "as the responsible party" on the resident's account for billing purposes. <u>Cook</u> at 172. Thus, the granddaughter's own personal liability became consideration for her grandmother's residency. In other words, the granddaughter was the actual party to the contract, with benefits flowing to her grandmother. That was their intent all along. <u>Id.</u>

This pivotal distinction was illuminated in a federal case against another Golden Living affiliate in Nebraska less than two years ago:

> [The nursing home] cites a number of cases from other jurisdictions (mostly Mississippi) that have used the third-party beneficiary doctrine to compel non-signatories to arbitrate in circumstances similar to the case at hand…. But in none of these cases did the courts address whether a contract existed in the first place…. Before there can be a third-party beneficiary, there must be a contract…. The Court finds the third-party beneficiary doctrine inapplicable [where the resident's son] is not suing to enforce any contract, and [the nursing home] has not argued that any contract was formed between itself and [the resident's son]. Nor was an agreement to arbitrate formed by [the son] acting on [the resident's] behalf…. [Thus, the resident] was not bound by the Arbitration Agreement….

GGNSC Omaha Oak Grove, LLC v. Payich (Slip Copy, No. 4:12cv3040), 2012 WL 2021868, at *7 (D.Neb. June 5, 2012). To that same end, Mississippi has rejected third party beneficiary status where "language in the admission agreement stated that the execution of the arbitration provision was ***not a precondition*** for … services at the facility." Peyton, supra, 17 So.3d at 179 (¶24) (emphasis added), citing Mississippi Care Ctr. of Greenville, LLC v. Hinyub, 975 So.2d 211, 218 (¶16) (Miss. 2008). The appellate courts have reasoned that if an arbitration agreement "was not a part of the consideration necessary for … admission," then it obviously "was not entered into for [the resident's] benefit." Peyton at 179 (¶24), quoting Hinyub at 218 (¶17). There can be no third party beneficiary without a third party benefit. Id.

Presumably for purposes of avoiding any claims of duress or adhesion, Golden Living emphasizes the fact that its purported arbitration agreement was not a condition of admission. Doc. 26 at 8. Under Peyton and Hinyub, that fact alone forecloses any theory of third party benefit here. Golden Living is "estoppe[d] … from embracing the benefits of a contract while simultaneously trying to avoid its burdens." Cmty. Bank of Mississippi v. Stuckey, supra, 52 So.3d at 1183. The arbitration terms cannot be separate and free-standing for purposes of conscionability and at the same time incorporated by reference and subsumed into the admission agreement for purposes of later dubbing a third party beneficiary.

In Cook, there was "no power of attorney…." Cook at 1170. There was "no writing purporting to give [the daughter] all-inclusive power" to sign on the resident's behalf. Id. The daughter "did not have the statutory power to bind [the resident] to the arbitration agreement." Id. at 1171. And even though the daughter had "indicated to the admissions coordinator that she possessed the authority to execute the agreement," there was "no evidence of any act or conduct on the part of [her mother], the principal, to indicate [the daughter's] authority." Id. at 1171.

Irrespective of third party beneficiary theories that do not apply here, the daughter in Cook "could not bind [the resident] through apparent authority," and neither can Mr. Gross in the present case. Id. Pursuant to Cook, King, Green, Rhodes, and Guthrie, Golden Living cannot prevail under any agency theory. This fact alone is enough to invalidate the arbitration document. However, there are still more reasons why the document should not be enforced.

> **(III) Even if Mr. Gross had been authorized to sign for his mother, the arbitration agreement would still be unenforceable because its chosen forum is unavailable.**

Besides not being signed by Ms. Wagner or anyone authorized to act on her behalf, the contract is invalid for a much simpler reason: The Court of Appeals said so. In fact, the Court issued that ruling against the very same nursing home chain at issue here: Golden Living Center.[3] The case is GGNSC Tylertown, LLC v. Dillon ex rel. Hargrove, 87 So.3d 1063 (Miss. Ct. App. 2011), reh'g dismissed May 8, 2012. Though Hargrove was decided in July of 2011, Golden Living declined to apply it, distinguish it, or even bring it to the Court's attention in the present case. But clearly, the opinion warrants close examination here.

In Hargrove, the Court of Appeals denied a motion to compel by looking no further than "the language of the arbitration agreement" itself. Id. at 1065 (¶9). It provided that

> any and all claims, disputes[,] and controversies ... arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration to be conducted ... in accordance with the National Arbitration Forum Code of Procedure.

---

[3] In early 2006 (mostly all on the same day), Golden Living registered ten separate Delaware LLCs that appear to correspond to its ten different Mississippi locations; but the LLCs all share a common sole member and a common principal office address in Fort Smith, Arkansas. See Mississippi Secretary of State's online Business Services database, http://www.sos.ms.gov/business_services_business_formation.aspx (accessed Feb. 18, 2013). See also Golden LivingCenter's common website at http://www.goldenlivingcenters.com/_locations-staff/centers-by-state.aspx (accessed Feb. 18, 2013).

Id. (¶9). That provision was fatal, because the National Arbitration Forum had "ceased to administer consumer arbitration disputes, thus leaving courts unable to enforce the arbitration clauses that agreed to arbitration conducted in accordance with the NAF's rules." Hargrove at 1065 (citing a press release posted on its NAF's website).[4] Not only did the press release circulate throughout the nursing home industry in 2009, but the Mississippi Supreme Court had already used it to invalidate yet another arbitration agreement. Hargrove at 1065-66 (¶10), citing Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex rel. Braddock, 14 So.3d 695, 706 (¶36) (Miss. 2009).

The agreement in the instant case contains the exact same language that capsized the motion to compel in Hargrove. That document is appended in full to the underlying motion as Defendant's Exhibit A (Doc. #25-1 at 1 (PageID #298)); but here is the relevant passage, which appears in the very first paragraph:

> It is understood and agreed by Facility and Resident that any and all claims, disputes, and controversies (hereafter collectively referred to as a "claim" or collectively as "claims") arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration to be conducted at a place agreed upon by the Parties, or in the absence of such an agreement, at the Facility, in accordance with the National Arbitration Forum Code of Procedure, which is hereby incorporated into this Agreement\1, and not by a lawsuit or resort to court process. This agreement shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1-16.

Golden Living's contract falls within the timeframe referenced by the contract in Hargrove. Hargrove at 1064 (¶4). The above excerpt shows that there is practically no daylight between the two. And insofar as the Plaintiff can tell, the NAF has not returned to providing arbitration services.

---

[4] See *National Arbitration Forum to Cease Administering All Consumer Arbitrations in Response to Mounting Legal and Legislative Challenges*, http://www.adrforum.com/newsroom.aspx?itemID=1528 (last accessed Apr. 11, 2014).

Hargrove cited Moulds for the governing principle that "[a]rbitration is limited to choice of forum." Hargrove at 1066 Moulds at 697 (¶3). Speaking for all nine of her colleagues on the appellate bench, Judge Carlton explained as follows:

> The arbitration agreement before us clearly reflects that Tylertown sought to have its disputes resolved exclusively by arbitration in accordance with the NAF, a forum that now refuses to arbitrate disputes such as the one in the present case. In keeping with the precedent of the Mississippi Supreme Court, this Court recognizes that the forum in the agreement between Tylertown and Dillon is no longer available, and we "decline[ ] to order the lower court to pick a forum" not anticipated by either party. Moulds, 14 So.3d at 695 (¶45). Therefore, this arbitration agreement is unenforceable….

Hargrove at 1066 (¶13) (citing Moulds). The court "[a]ccordingly … affirm[ed] the circuit court's judgment denying the motion to compel." Id.

As a matter of law, the Hargrove contract could not survive the dissolution of its designated forum; and Golden Living's agreement suffers the same fate in the present case.

## CONCLUSION

The Defendants cannot enforce a contract that never took effect. They cannot assume mutual assent where none was ever expressed or implied by Ms. Wagner. They cannot unilaterally appoint a representative without Ms. Wagner's consent or authorization. And they cannot arbitrate this case in a forum that no longer arbitrates cases like this one. For those and all the other reasons articulated herein, the Defendants' joint motion to compel arbitration must fail.

Respectfully submitted,

**MORGAN & MORGAN - MEMPHIS, LLC**

By: *s/ Peter B. Gee, Jr.*

**Peter B. Gee, Jr.** (MS No. 100589)
2600 One Commerce Square
Memphis, Tennessee 38103
Tel: (901) 523-1222
Fax: (901) 523-1999
Email: pgee@forthepeople.com

## CERTIFICATE OF SERVICE

I hereby certify that on **Friday, April 11, 2014**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

**Michael E. Phillips, Esq.** (mphillips@hatlawfirm.com)
**M. Madison Taylor, Esq.** (mtaylor@hatlawfirm.com)
HAGWOOD ADELMAN TIPTON, PC
One LeFleur's Square
4735 Old Canton Road, Suite 111
P. O. Box 14188
Jackson, MS 39236
*Attorneys for GGNSC Ripley and GGNSC Administrative Services*

I further certify that as of this filing there are no non-CM/ECF participants, and no service by mail is required.

By: *s/ Peter B. Gee, Jr.*

**Peter B. Gee, Jr.** (MS No. 100589)